Your Honor, this is the first case of the morning call, 208-978 from the state of Illinois v. Ida Sisson, on behalf of the appellant, Ms. Kim DeWitt, on behalf of the appellate, Ms. Ann Steger-Jones. Good morning, Your Honor. May it please the court. Ida Sisson was convicted after a jury trial of aggravated kidnapping and home invasion. In his first appeal, this court vacated, reversed the aggravated kidnapping and reduced it to aggravated unlawful restraint and then sent the case back for a crankle hearing on the issue of ineffective assistance of counsel. This case is back up before this court because the trial court denied that motion and sentenced Mr. Sisson to five years on the aggravated unlawful restraint. In our brief, we raised, again, the ineffective assistance of counsel as well as a sentencing issue. Unless Your Honors have questions about the sentencing issue, I'd like to concentrate this morning on the ineffective assistance. Now, under the Strickland standard of ineffective assistance of counsel, the standard is whether or not counsel was incompetent or exercised sound trial strategy and whether there was prejudice to the defendant. A misapprehension of the law cannot be the basis for sound trial strategy, and that's what we have here. Let me ask a question on that. So if somebody does something, a trial lawyer makes a calculated decision to do something, it could be okay. Right. Because it's a strategy. Right. If a lawyer does exactly the same thing under exactly the same conditions, accidentally, then it's not okay? Well, Your Honors... We're looking at the subjective state of mind of the lawyer who's making these strategy decisions. No, we're looking at what happens as a result of what counsel says in terms of how the jury views the evidence. Well, that's all going to be the same. I'm talking about purely the question is, it could be acceptable trial strategy as long as it's done intentionally. The same exact conduct, which will have the same exact effect on the jury, if it's done accidentally, is not acceptable? I'm not saying that's what happened here, but that's my question because that's what I'm trying to grapple with. It would seem to me that if the conduct can be construed as acceptable trial strategy, it would be construed that way regardless of whether it was an intentional strategy or inadvertent. Well, I think that's where the standard requires prejudice, and that's where you look at how the jury, whether it had an effect on the jury's verdict, and whether it's accidental or intentional, if the jury does not give the defendant a fair trial as a result of what counsel did, it doesn't matter. I agree with you. I think we have to look and see what the effect was on the jury and the prejudice, and that's going to be the same whether the guy stumbled into it or whether, and in this case the question is, did he know that a gun was an element of the thing? Correct. And let's say, so if focusing on the fact that he may not have known that doesn't get you where you want to go, because even if he didn't know, you have to say that even if he did know it, this would be a foolish thing to do. Even if he didn't know that the gun was an element of the offense, by conceding home invasion to the jury, he prejudiced his client because his client said, I didn't have a gun. Right, so it would have been the same, you'd be making the same result even if we knew that in fact the lawyer involved here was aware that he was... Correct, I'd be making the same argument. Right, okay. Defense counsel, however, did not submit a jury instruction for aggravated unlawful restraint. He submitted a jury instruction for unlawful restraint, correct? That's correct. Which, no weapon. Right. No unlawful restraint. And so, although he argued about the gun element in terms of the aggravated kidnapping, he never argued it in terms of the home invasion. The only element that he even seemed to contest as far as the home invasion was whether or not there was a threat. And so, if in fact he was, in his mind, contesting the gun element, and he contested the threat element, there's no reason he shouldn't have asked for a criminal trespass instruction as a lesser included to the home invasion. But he didn't do that. And that shows that there was no strategy here. Suppose he did that, though, on purpose. I mean, suppose he did that on purpose. Suppose he just wanted to muddle things up and focus, really, on the kidnapping, which was the big problem here. Well, the problem is that his strategy was not all or nothing on the aggravated kidnapping. And the fact that he asked for the lesser included on the unlawful restraint shows that, in his mind, he was contesting the gun element. I agree with you. That shows, potentially, what's in his mind. It gets back to my earlier question, do we care what's in his mind? Because then we're talking about, subjectively, what's in this guy's mind. Did he do this on purpose, or did he stumble into this course of conduct? And that's what I'm trying to find out, if that makes a difference. No, I don't believe it does, Your Honor. Okay, so once we show it's in his mind, he's made a mistake, you're not done. You still have to make the prejudice argument, right? Sure, yes. Well, what are the offenses, a home invasion? What are the classes of offense for a home invasion, the class of offense for an aggravated kidnapping, or an aggravated unlawful restraint? What are the penalties for a home invasion, the penalties for an aggravated unlawful restraint? The charges were aggravated kidnapping and home invasion, and those were both class X offenses. I understand that. But he was arguing for an unlawful restraint. But even if you can argue with a gun, it was an aggravated unlawful restraint, and that was his strategy, as Justice O'Malley says. What are the differences in the penalties? Well, my client was sentenced to five years. I believe it's a class two. And the home invasion is class X? Right. So what would the strategy be to throw him under the bus, if you will, on a class X and try and get a molester? It's clear, though, under this record, that it wasn't a strategy because he was also asking for unlawful restraint. And regarding the aggravated kidnapping, he was discussing the gun element. He was not discussing it in terms of the home invasion. And, in fact, what we have here is the defendant got up on the stand and said, I did not have a gun. And he never – counsel did not – when he told the jury we're conceding home invasion, he didn't grasp that when the jury went back to deliberate on both offenses, both the kidnapping and the home invasion, that the jury would take that concession as to the elements and look at the elements of the home invasion and transfer the common elements over to the aggravated kidnapping. And also, by counsel taking a position contrary to his client's own testimony, he hung his own client out to dry in front of the jury. My client's credibility was destroyed by his own attorney. And the state says that – well, and actually the trial court, in denying the Krenko motion, said, well, counsel had defendants' written statement, what was he going to do? That statement was never admitted into evidence. And, in fact, the state, prior to trial, moved defense counsel to be barred from bringing it in. So the jury never heard – never saw a written statement. And, in fact, my client disavowed that statement, and he testified at the suppression hearing I didn't have a gun. So defense counsel knew before the trial even started that my client was contesting the gun. So for an opening statement and closing argument to tell the jury we're conceding home invasion, you know, that's not just speaking in the vernacular. That's a term of art. That's the specific charge that was in front of the jury. Okay, but could he have done that on purpose here? I mean, could he have given – I mean, this guy's dead in the water on the home invasion. I mean, there's no way in heck he's going to prevail on that charge. I mean, I've got to say, whether it was intentional or unintentional, my question is, could he, under the facts of this case, say, I'm going to concede that home invasion? Or is he precluded by doing that if he knows the guy's going to testify he didn't have a gun? Well, in Johnson, the court moved away from the Hattery per se reversal rule. But what they didn't move away from in the Hattery case is saying that if an attorney is going to get up and tell a jury and concede guilt on a charge on which there's been a not guilty plea, and particularly when there's been testimony disputing the elements, that that consent should be on the record. And it's not. The consent of the defendant should be on the record. Of the defendant to that strategy. And that's not on the record. So this court – and that's not my client's duty. It's the attorney's duty. And not only that, in many cases, when there's a Krankel hearing, the courts have had the advantage of hearing counsel's explanation for his conduct. In fact, in the state's case, they cite Palmer and Kelly. There's another case, Kozlowski. In our brief, we don't have counsel's explanation here because he's a fugitive from justice. That's not Mr. Sisson's fault either. And this court should not need anything more into the record in order to find strategy based on the fact that Klein was not available at the Krankel hearing. Now, I know Your Honors are concerned about prejudice. The evidence came primarily from the two women in the house, Felicia Bernard and Sophia Morales. The gun that was found was found above the bathroom vent in Felicia Bernard's townhouse. Her boyfriend was the one who supposedly was the drug dealer who stole my client's money. They found the gun in Bernard's townhouse because they get through the wall between the two. Right, right. Now, in deciding whether or not this trial was fundamentally unfair and whether the defendant was prejudiced, I'd like to talk a little bit about there's four specific points that the Strickland court said courts should use in determining whether there's ineffectiveness. First, that counsel has a duty to advocate for his client's interests. Well, counsel didn't do that here because he conceded a point that my client specifically testified, contested in his testimony. Counsel has to bring to bear the skill and knowledge as will render the trial a reliable adversarial testing process. That didn't happen because he did not, by conceding the home invasion, he also conceded an element of the aggravated kidnapping. He destroyed his client's own testimony and credibility. He didn't ask for lesser includes on the criminal trespass on home invasion. And, therefore, that factor weighs against. Also, the court said in Strickland that the court should look at the ABA guidelines for determining what is reasonable assistance. And the ARDC records show that at the time that this trial was going on, defense counsel's alcohol abuse had adversely affected his ability to conform to the rules of professional conduct, which I would say are very similar to the ABA guidelines. This admission is a factor for this court to consider in whether or not there was a fair trial. Finally, the court in Strickland said that some errors will have a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture. And that's what we have here. As I said in my briefs, conceding on the home invasion had a cascading effect. He didn't get his client's consent. His client testified contrary to that. He didn't ask for lesser includes on the criminal trespass, and he defeated any chance at a verdict on one of the lesser includes that he himself requested. How does this address the point? I thought you were going to address prejudice here. Yes, and what I'm saying is Prejudice means something different than I think you're talking about here. Those are things that the Strickland court said to consider in determining whether or not there's I thought the prejudice, those are things that certainly may not have been good for the guy to get it happened, but the ultimate question of whether there's prejudice is whether it mattered. Right. I mean, if the evidence is that he's, like I said before, if the evidence is so overwhelming as to the home invasion, and he concedes it improperly, whatever, there's no prejudice though, right? If the jury would have gotten the same result anyway. Well, I believe it is because of the unique circumstance here where the jury, it came down to basically a credibility question between primarily Sophia Morales, because Felicia Bernard had some credibility problems herself, and my client. But the jury was not able to adequately and fairly assess the credibility, to engage in that credibility question or weighing, because defense counsel destroyed his own client's credibility by conceding a point that my client disputed. Okay. For those reasons, we ask that your honor is granted new trial. Okay. Thank you. All right, thank you very much. Counsel for the people. May it please the court and counsel. My name is Anastasia Brooks, and I represent the people in this case. First of all, I want to just very briefly talk about the principles behind Strickland, because I think they are very important in applying to the quite unusual facts of this case. The key principles here all favor the state. That is, the high amount of deference that has to be given to the trial counsel's strategy, the fact that the reviewing courts cannot use hindsight in order to consider a counsel's conduct after the facts, that there are countless ways to defend, that there's no set of rules that applies when weighing what counsel did, and also that the defendant has to show prejudice, which is also a crucial element here of what defendant has to prove. It gets down to what Strickland says is, is this within the act or mission within the wide range of reasonable professional assistance? And when they talk about a range, it's a wide range. And that means whether counsel could have avoided the concession or could have made the concession, both could fit within the range or one or the other could be outside the range in any given case. But that's the question in this case. Is it within the wide range of objectively reasonable representation? And that gets down to the question of can some competent attorney have done the same thing, gone up to the jury and said, we're not really conceding this. He probably did it. We might have a technical argument about it. I'll talk to you later in closing arguments about that. But he was essentially telling the jury at the outside. Can some other competent attorney... But weren't the two jury instructions that he had given, home invasion and unlawful restraint, totally inconsistent? No, Your Honor, because the unlawful restraint, the defendant could still be found guilty by the jury on all the elements of that offense. In other words, having no gun is not an element of unlawful restraint. He could still have committed that offense even if he had a gun. So essentially, if the defendant has to choose, what's my lesser included to aggravated kidnapping, unlawful restraint, or aggravated unlawful restraint, that's a freebie. But what's the lesser included of home invasion? I guess my issue is and my question is the same as I ask counsel for the defense is, you have a class X offense and then he's trying to get down a class 2 offense. He's trying to get a lesser included on a class 2, but he's throwing him under the bus on a class X, which carries with it 6 to 30. So is that not a little inconsistent to you? Well, the first thing is he didn't entirely sell out the case because it was hedged and he did come back in and say later, if you plead my client, then he's not guilty of that offense too. But there is that sort of partial upfront concession. But getting to your question, one important point here is that I believe also in the remand, the prosecutors were asking for discretionary consecutive sentencing. So any extra class X conviction that he can avoid can be very important, particularly because aggravated kidnapping was truth in sentencing, 85 percent limitation on good conduct credit. If there's one to avoid, that would be it. And if he had to serve one class X and not have to subject himself to, even if it were discretionary consecutive sentencing, for the protection of the public. And this guy was very dangerous, breaking into strangers' houses with a gun and holding them up in a hostage situation, very volatile. So a judge might very well have adopted that argument. A counsel has to consider that quite strongly. But then, I mean, his closing argument, he said, I mean, he entered the house. That's why we're here, basically here conceding the home invasion. Almost as if his understanding of a home invasion is entering a residence. Well, it can be easy to assume that because he said that, that he had misapprehended the law, but that's not the only interpretation and why strictly requires presumption that counsel knows what he's doing. And it's up to the defendant to rebut that. And one way for the state to say, no, the defendant can't rebut that, is because it could be that the defense was merely oversimplifying that part of the case for the jury. At the outset, he is telling the jury, this, and the defense theme of the case is, this is all about secret confinement, was this aggravated kidnapping, that is all we are here for. Narrow focus wants the jury's attention throughout the entire case. Forget about all this other stuff. I want your jury focused on, is this secret confinement? And that's all the jury is supposed to be caring about as they go through all this testimony. With respect to Strickland and with respect to the competency of this lawyer, do you think that we have the ability or that we should be considering the ARDC file  Well, it's difficult to hear with considering the attorney's competencies, because as the defense mentioned, we don't really have attorney's explanations. But part of the problem with considering the ARDC stuff, the admission that he didn't consistently perform up to expectations that the rules require. And, of course, the rules are a higher standard than what Strickland requires. Strickland is just competency, and they're not supposed to improve the quality of legal representation. They're supposed to ensure defense get a fair trial. So even the admission is not, I was ineffective. And it wasn't also an admission that he was ineffective here. And even if he admitted he had been ineffective here, it still wouldn't be binding on this court. And this court could still find that he had given competent representation. Admissions aren't binding. But it gets back to your question as well. It's about the lesser includes for home invasion. Because he could have given a criminal trespass, and that could have been a competent thing to do. But that's not the question here. The question is what defense counsel did. Was that competent? Was that also objectively reasonable within the wide range of competent representation? And it gets into the analogy of the two-front war. And at the beginning, he's focusing the jury's attention on one element of one of the crimes. And that's what he's going to try to get out of this. The facts are stacked very poorly against his client. So he's going to get something out of this trial. And that's what he wants. And so instead of fighting the two-front war, he's going to make peace on one front and say, I'm just going to fight all my effort on this side. Let me finish up. When he's going to make this peace on one front, their point is that he messed that up. Because if in order to have the client get up and testify contrary to the lawyer's statements, then that's he didn't do a good job of making peace there. I mean, if he had made the peace completely and gotten his client not to get up there and testify like that. But here you do have the inconsistencies he's pointing out. I mean, he may be saying, look, we're going to concede home invasion. But his client gets up and doesn't concede it. Right. So can a lawyer do that? And that does affect. I can see the argument that that would affect the client's credibility across the board. Those are good points for the defense perhaps in another case. But here it's a distinct situation. There's no rule in Strickland that says counsels can never contradict the credibility of their clients. They can never say, like in this case, they said, well, if you believe my client is not guilty, but then he also got up at the same time and said, well, I can't really find any reason why Morales lied. He was up there talking about Morales' credibility, and he had nothing to say against her. But essentially in this case, the defendant likes to state this case as a defense word against Morales' word. Well, as I'll talk about hopefully a little bit later, all the weight of circumstances and physical evidence, that was on Morales' side, and the defendant had only his own word. And you also have to look at it not in hindsight, but from circumstances at the time. Well, the defendant can decide whether he wants to testify and what he's going to talk about at the end of the case. It's basically his choice at that point. And the defense counsel can advise him whether he should testify or maybe, you know, don't lie, don't say things like that. Wait a second. How could he get up on the stand and testify differently than he testified in the motion of suppress? Isn't it ultimately the defendant's decision whether to testify or not, not counsel's? It is the defendant's decision, but that's why the counsel cannot necessarily anticipate with certainty what the defendant is going to decide to do when the time comes. It could be a situation like here the defense did deny the gun in the motion of suppress hearing, but then the motion of suppress hearing is not admissible. But then why would he get up on opening statement and make that? Exactly. Well, that's what I'm getting to. I'd like to get to that point in the context of this point here, which is this case was not really about the credibility of the defendant. This case was about if it was reasonable for the counsel to say this case is all about secret confinement, then essentially defendant's credibility is meaningless. Because defendant didn't really say anything with respect to the secret confinement element. And if defendant's testimony had been crucial about the secret confinement element, then it becomes a lot more powerful argument. Yeah, you sold my credibility out. Now the jury is going to disbelieve me on secret confinement. But this case was all about defense counsel's credibility. And essentially, as I was going to say, reconstructing the circumstances at the time, defendant goes into the motion of suppress hearing. He was hit with a phone book three times. He said he wanted a lawyer three times. Judge says, I don't believe any of that. And the defendant said, well, and they also, the police made me sign my co-defendant statement. And the judge says, no, wait a minute. This story is most exculpatory. Why would the police coerce this out of you? It doesn't make any sense. And he didn't believe it. So now you have a defense counsel says, my client is poor at testifying. My client tells lousy lies. And the jury is going to see right through it. He knows from the start that his client is not going to present well on the stand. And then you've got a sympathetic victim who's crying about her children. That can all be anticipated. There's no way he knows. Because it was a stranger's house. It was a sympathetic situation. And he has nothing to say against her. So he's not going to make this case about defendant versus Morales. Because it's only defendant's own word. Rebutted by several circumstances, which I'd like to get to. Police have this kidnapping report. When they see the people running the house, they knock on the door and hear a male voice. Then Morales shows up and gives a list of pretty patently bogus excuses through the door. The SWAT team is eventually called. They're using a bullhorn to communicate with no response. They throw a phone inside. Six-plus hours later, eventually the children are starting to get up. And they're calling out their names. And eventually the children run out. And they figure, well, I think the children are safe. So that's the reason why they waited in the basement. They come out. And there's no reason but threats with a gun for why this got drug out for so long. And the other thing is there's no reason for Morales to lie. And if what the defendant says was true, and the defendant's story is, he told Morales that Morales supposedly helped him out. And she wasn't threatened, according to the defendant. But then he also told Morales to do whatever he wanted. And once again in the attic. And that happened within 30 minutes, according to the defendant's testimony. So why did Morales wait for so long? Which, according to the defendant, she was free to do whatever she wanted. Well, the other thing the counsel can think of, one element of the defendant's story is he's going to put this all on his co-defendant, his accomplice, Matthews, his accomplice in the residential trespass. Essentially, any competent attorney is going to know the common design rule is going to kick in. If Matthews is tying him up in the basement because the defendants want to hide in the attic, well, that's in furtherance of their common design of committing criminal trespass to a residence. And the defense counsel should know the defense is going to be guilty of home invasion by accountability anyway, whether he personally had the gun, whether he threatened them. And there's no reason at all for Morales to lie about the two people and identifying the defendant as being the ones that were tying them up in the basement. So basically what you're saying is even if you do find that counsel was ineffective, the second prong of Strickland is not met. But for the error, the outcome would not have been different. That's true. Even if it had not been conceded, there would be no reasonable doubt of guilt. That is true also. But you have to consider the overwhelming case means also that a counsel can reasonably anticipate defending against home invasion, not even requesting a lesser included, would be futile to defend it in the circumstances of this case. And I also want to get to the physical evidence. The gun in the attic. The police heard them through the next door apartment, in the bathroom, above, and they found it in the vent. Of course, the gun that the defense counsel would have known beforehand, the defendant admitted having a 9mm Lorsen. Police find the 9mm Lorsen. Now, it wasn't admitted, but then again, how does the defense know? You can't say in hindsight the defense didn't know it was going to be admitted because essentially it could have been admitted in rebuttal. The defense is going to get there and say, I don't know anything about a gun, and then all of a sudden it's like, well, here's your statement in rebuttal. The prosecution could have put it on. The only bar the defense from putting it on, and of course they didn't present it in their case in chief, but the defense counsel has still got to know, yeah, my client wants to get up and testify, basically perjuring himself, which that could be his right in a criminal trial, even if perjury is a crime. But essentially the defense counsel has got to know, well, my client already admitted having the 9mm Lorsen. He told police that. He tried to backtrack from it later, but it seems like he admitted having it to police, so he probably had it, and if he wants to get them to deny it, that's perjury. So an ethical defense counsel has also got to be bound by the rules of ethics in deciding what he wants to do. But another thing is the defendant says that Bernard parked the car in an on-drive way. Police find it a block away exactly where Bernard said she parked it. So that corroborates Bernard's story and contradicts the defendant's story, and also why would the defendant park it a block away, want Bernard to park it a block away unless there's something untoward going to happen, and then why did he lie about it? So that's all incriminating. The fact that Morales leaves the apartment eventually crying, she has a shoelace. They said they took shoelaces and socks off of Bernard. These one shoelace that tie up the hands of one of Morales and shoelace. I'm sorry. No, you go ahead and finish. Okay. Essentially that the tied shoelaces are physical evidence, the socks that were handed over by Bernard, and also the defense story about flushing drugs is his reason for hiding, but yet there was no marijuana on him. So that, again, is all physical evidence. So for those reasons, the state requests this court to affirm if you have no other questions. Okay. Thank you. Thank you. Ms. DeWitt for rebuttal, please. Ms. DeWitt, before you get started, let me ask you the same question as I asked the state. The second prong of Strickland, but for the errors or but for the conduct of the attorney, would the outcome have been any different? I believe that had my, yes, I believe it would have been because the jury would have been able to fairly assess the credibility of my client without his attorney selling him out. With all this physical evidence and all this testimony with respect to a gun. The gun, there was a gun found. No fingerprints matched it to my client. It was above Felicia Bernard's bathroom vent, and her boyfriend was the drug dealer who stole my client's money. So that was the same area where your client fell out? Yes. Yes. So, yes, those are the facts. Couldn't there be a reasonable inference made that that gun was in fact your client's when somebody saw it held to the face of Ms. Bernard? Correct. It was found that both of the witnesses testified that he had a gun. Yes. I mean, how would the outcome have been any different?  He did not have a gun. My client has never been convicted. Isn't that the juror's job to weigh the credibility of the witness? And that's where, Your Honors, I can't stress enough that when a client testifies but his attorney destroys his credibility in front of the jury, that's not a fair trial. That's not a fair assessment for the jury. And my client has never been convicted of perjury, number one. Let me just follow up before you leave this other topic here. We've got a situation here where we've got two incredibly sympathetic victims. We've got a television show standoff for six hours. Yes. We've got the one victim saying, No, I'm okay. I don't want to come out. Go away. And she says, This guy's holding a gun to my head, forcing me to say that. One of them is. Doesn't matter which one. Doesn't matter which one. Not at the time. But, yeah, she says that at trial. And your guy's going to believe the same. I told her I was just passing through. Don't worry about it. Well, Your Honor, I think that. I mean, this goes on for, what, six hours, right? If I can speak candidly. Well, we're recording it, so. When my client testified, he was extremely candid in talking about why he went there. You know, he was buying drugs. And, you know, he was afraid that the police were going to get him. And he said, Well, we're just going to slip into the nearest place. He didn't invade technically. He went in. The woman who lived there said, Well, she don't live here. And he says, Yeah, we're just slipping in. You know, his explanation in his testimony is very. There's a very good chance that a jury could believe it because he's being very candid about his own conduct. Well, that may have all started out that way. But he got to the back door and saw the police. Then that claim goes awry. And now we have to believe that he's told these women, Look, for six hours, he didn't threaten them. Right. And they stayed inside, tied up in a basement. All right, go ahead. Well, and also, Your Honor, counsel pointed out that, again, relying on the written statement, which was never admitted, even if it had come in in rebuttal. My client testified consistently at the suppression and the trial. I didn't have a gun in the police course. That statement. The fact that the gun brand or whatever you call it, Lorson, matched what the police forced him to say in a statement is not a factor to. It's not really. It carries no weight to a jury. Well, the jury never heard that. But as far as their argument as to why this was not where why counsel may have used strategy as opposed to been incompetent, you know, we're looking at what the statement said. But counsel knew prior to trial that statement was not coming in. And that his client had already always disavowed it and testified. I didn't have a gun and I didn't threaten anybody. Now, it's not. How did counsel know that statement was not coming in? Because the state moved prior to trial to bar the defense from bringing it in. And how about her argument that it could have come in on rebuttal? My client had still. That's no. It's no more damaging for my client to say, yes, OK, if that statement comes in in rebuttal, my client has said it's it was involuntary. It was coerced. But to say an opening statement, to think an opening statement, I'm going to concede. One of the classics charges, because maybe the state's going to move to bring in something that they're not. They've already said they're not bringing in and they're keeping me from bringing in. You know, that's not strategy. That's incompetence. And my client had a right to a defense on both charges, not just one. The state's position that the cadenary charge was an 85 percent truth in sentence and the home invasion is not. That's correct, is it? Right. OK. Thank you very much, Your Honor. Thank you both for your arguments. The court will stand at recess for a few minutes. The case will be taken on advisement. Decision will issue a new court.